**Opinion filed August 21, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00075-CV

_____

## IN THE INTEREST OF A.H., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10738-CX**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and father of A.H.[1]  Only the mother, Appellant, has appealed.  On appeal, Appellant challenges the sufficiency of the evidence to support the trial court's findings that (1) she committed the alleged acts as grounds for termination of her parental rights, and (2) termination of her parental rights is in the child's best interest.  She also challenges the trial court's jurisdiction, arguing that the case was automatically dismissed prior to the trial court's rulings.  We affirm the trial court's order of termination.

---

[1]We use initials to refer to the child and the child's family members.  TEX. R. APP. P. 9.8(b).

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; and (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child. *See id.* § 161.001(b)(1)(D), (E). The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest. *See id.* § 161.001(b)(2).

In her second and third issues on appeal, Appellant challenges the trial court's findings under subsections (D) and (E) and its best-interest finding as being unsupported by legally or factually sufficient evidence.

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding,

2

assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266 (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals

3

to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by her past conduct and determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v.*

*May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

## II. *The Evidence Presented at Trial*

The Department has been involved in Appellant's life since January 2021 due to her marihuana use, mental health concerns, and the incidents of domestic violence between her and the father. In October 2021, while Appellant was pregnant with A.H., the Department removed Appellant's one-year-old son, A.H.2. Appellant's Facebook posts prior to A.H.2's removal included threats of suicide by overdosing on pills and not wanting to care for A.H.2. Appellant voiced pervasive thoughts about injuring A.H.2, "killing him by smothering him with a pillow," "leaving him on random people's door step[s]," and stating that she "didn't care if [the Department] removed [him]." She also texted the father that she was cutting herself, was intending to cut A.H.2, and was intending to treat A.H.2 "like [her] baby daddy treats [her]." Appellant likewise told a Department investigator that she struck A.H.2 and choked him.

A.H. was born on December 1, 2021. In June 2022, A.H.'s father became upset that six-month-old A.H. was crying, so he held a blanket over her face. Appellant did not remove the blanket but posted on social media about what the father had done. Around that time, the Department was alerted to another concerning Facebook post by Appellant, which indicated that "possible domestic violence" was ongoing between her and the father.

Department Investigator Ashley McNalley and another Department case manager met with Appellant at her home. Appellant was required to take medication

daily to treat her depression, but McNalley found unused medication for a prescription that had been filled almost two months prior. Given Appellant's history with the Department, the domestic violence in her home, and the potential danger that it posed to A.H., the Department sought and was granted temporary managing conservatorship of A.H. in June 2022.

At the final termination hearing, permanency case manager Christophe Mwungura testified that Appellant completed most of the requirements in her Family Plan of Service. However, Appellant tested positive for marihuana in August 2022 and September 2023, missed scheduled visits with A.H. in October 2023, and failed to submit to drug testing in July, August, October, and December 2023.

Appellant was arrested in July 2023 for assaulting her mother while living in her grandmother's home. When she bonded out, she lived with her sister's friend for "[p]robably less than a month," with her friend for "a month or two," with the father's aunt for two or three months, then again with her grandmother, where she has been since. Appellant pled guilty to assaulting her mother and satisfied her sentence by serving fourteen days in the Taylor County jail in November 2023.

Appellant and the father testified at trial and admitted to "physically fighting" with each other. Appellant acknowledged that she used marihuana prior to the Department's involvement but denied any use thereafter. She attributed her positive drug test results to exposure by her friends, explaining: "I can't control that. If I'm going to a party, can't control who's there." Appellant claimed that she only has "[l]ike one or two" drinks at parties that she attends at bars "[l]ike every other week."

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(D) and (E) and found termination to be in the best interest of A.H. This appeal followed.

6

III. *Analysis*

A. *Automatic Dismissal*

Appellant contends in her first issue that the trial court's order of termination is void because this case was automatically dismissed prior to the commencement of the final hearing. *See* FAM. § 263.401. Specifically, Appellant argues that the trial court did not "commence" the final hearing on the merits for purposes of Section 263.401 before the December 16, 2023 automatic dismissal date.

In a parental termination proceeding, a trial on the merits must commence by "the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator," otherwise the trial court is deprived of jurisdiction over the suit and the suit is automatically dismissed. *Id.* § 263.401(a). In determining whether trial has truly "commenced," our sister courts have considered factors such as: (1) whether the putative commencement date is recited as a trial date in the final order; and (2) whether, during the time between calling the case and recessing on the putative commencement date: (a) preliminary matters were addressed; (b) the parties announced "ready"; (c) opening statements were made; (d) witnesses were sworn; (e) a party presented a witness to testify; and (f) exhibits were admitted by the trial court. *In re R.R.*, 676 S.W.3d 808, 813–15 (Tex. App.—Corpus Christi–Edinburg 2023, pet. denied); *In re J.L.J.*, 645 S.W.3d 294, 295–96 (Tex. App.—Houston [14th Dist.] 2022, pet. denied); *In re Z.S.*, 631 S.W.3d 313, 318–19 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (collecting cases); *see also In re J.M.F.*, No. 14-22-00628-CV, 2023 WL 2182435, at *3 (Tex. App.—Houston [14th Dist.] Feb. 23, 2023, no pet.) (mem. op.).

In *J.L.J.*, the Fourteenth Court of Appeals held that trial did not commence prior to the automatic dismissal date because:

> No preliminary matters were addressed; the parties did not announce ready; no opening statements were made; and no exhibits were admitted. Moreover, no party called a witness to testify; the only witness to be sworn in and testify was called by the trial court, and the witness was asked only his name. His connection to the case was left unexplained.

645 S.W.3d at 297. A party presenting a witness to testify has been consistently recognized as the commencement of trial. *See R.R.*, 676 S.W.3d at 813–15 (the Department called the caseworker and sought to introduce an exhibit before recessing); *In re E.A.R.*, 672 S.W.3d 716, 720 (Tex. App.—San Antonio 2023, pet. denied) (the Department called its first witness who provided brief testimony); *Z.S.*, 631 S.W.3d at 317–18 (the Department investigator testified that she had nine years' experience and that she received allegations of neglect, then the trial court recessed the trial); *J.M.F.*, 2023 WL 2182435, at *2 (the parties announced ready and a witness was sworn and provided "roughly a page" of testimony in the record).

In the present case, the trial court's order terminating Appellant's parental rights shows that trial began on December 13, 2023. On that date, Appellant appeared pro se but ultimately accepted the trial court's appointment of counsel. The Department announced that it "will be seeking termination for today and [will] be calling Ashley McNally as our first witness." After Appellant's trial counsel was appointed and announced not ready for trial, the trial court announced: "with a hard dismissal date of December 16th, we are going to begin this trial." The Department thereafter offered two exhibits, which the trial court admitted, before trial recessed; trial resumed on February 13, 2024.

At each subsequent proceeding, the trial court reiterated that trial began on December 13, 2023, and the parties agreed after the conclusion of the final hearing that trial commenced on that date. Although no witnesses were presented on the putative commencement date, that is but one factor to be considered in the analysis. *See J.L.J.*, 645 S.W.3d at 297; *see also In re A.N.C.*, 679 S.W.3d 311, 319–320 (Tex.

8

App.—San Antonio 2023, pet. pending) (concluding that trial had commenced when the parties announced ready, the witnesses were sworn in, and the rule was invoked, then the parties identified for the trial court whom they intended to present as witnesses). Here, we conclude that offering exhibits that the trial court admitted was sufficient to "commence" trial on the merits for purposes of Section 263.401.

Appellant suggests that this was "not a serious attempt to start trial." We disagree. Moreover, whether the Department's introduction of exhibits was strategically "for the sole purpose of avoiding the mandatory dismissal deadline" is a matter for the legislature to consider, not the court. *E.A.R.*, 672 S.W.3d at 720; *see also Z.S.*, 631 S.W.3d at 318 ("[t]he legislature . . . is free to address that concern and could have done so in recent amendments"). We have considered the relevant factors and conclude, as the trial court did, that trial commenced on December 13, 2023, prior to the automatic dismissal date.

Accordingly, we overrule Appellant's first issue.

B. *Termination under Subsections (D) and (E) – Endangerment*

Appellant contends in her third issue that the evidence is legally and factually insufficient to prove grounds (D) and (E) because "[A.H.] was never in any danger." Although only one statutory ground is necessary to support termination, appellate courts must address a parent's challenges to a trial court's findings under subsections (D) or (E), as they may have implications for the parent's rights to other children. *See* FAM. § 161.001(b)(1); *In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law considerations with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either ground). And when the evidence pertaining to both subsections (D) and (E) is interrelated, as it is here, we may conduct a consolidated review of the trial court's endangerment findings. *See In re A.L.S.*, 660 S.W.3d 257, 263–64 (Tex. App.—San Antonio 2022, pet.

denied); *In re J.D.*, 436 S.W.3d 105, 114 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.).

The statutory endangerment grounds require clear and convincing proof that the parent has: "(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," or "(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Fam. § 161.001(b)(1)(D), (E); *In re S.M.R.*, 434 S.W.3d 576, 585 (Tex. 2014). "[E]ndangerment encompasses a larger array of conduct that 'expose[s a child] to loss or injury' or 'jeopardize[s]' the child." *In re R.R.A.*, 687 S.W.3d 269, 277 (Tex. 2024) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). The term means "more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment," but "does not require actual harm." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *see R.R.A.*, 687 S.W.3d at 277 (citing *Boyd*, 727 S.W.2d at 533).

To terminate a parent's rights for endangerment under subsections (D) or (E), the "parent's endangering conduct need not 'be directed at the child [nor must] the child actually suffer[] injury.'" *R.R.A.*, 687 S.W.3d at 277 (quoting *Boyd*, 727 S.W.2d at 533); *In re C.E.*, 687 S.W.3d 304, 310 (Tex. 2024). "[T]ermination under [subsection] (D) requires that the child's environment is a source of endangerment, and the parent's conduct may create that dangerous environment." *C.E.*, 687 S.W.3d at 310. Endangerment under subsection (E), in contrast, focuses on the parent's conduct, and whether the endangerment of the child's well-being was the direct result of the parent's acts, omissions, or failures to act. *In re J.S.*, 687 S.W.3d 541, 550 (Tex. App.—Eastland 2024, no pet.). Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and

10

conscious course of conduct by the parent is required. *Id.*; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). "A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child's physical or emotional well-being." *R.R.A.*, 687 S.W.3d at 277.

A parent's actions prior to and after the children's removal may show an endangering course of conduct. *See J.S.*, 687 S.W.3d at 550 ("[E]ndangering conduct may include a parent's actions before the child's birth and may relate to the parent's actions while the parent had possession of other children."). "Even evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child's well-being." *In re A.J.M.*, 375 S.W.3d 599, 606 (Tex. App.—Fort Worth 2012, pet. denied); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (Illegal drug use and offenses that occurred before the child's birth may be considered as part of a course of conduct that endangers a child.).

Drug use and its effects on the parent's life and ability to parent may also demonstrate an endangering course of conduct. *J.O.A.*, 283 S.W.3d at 345; *In re A.A.M.*, 464 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Illegal drug use creates the possibility that the parent will be impaired or imprisoned and thus incapable of parenting."). "While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm." *R.R.A.*, 687 S.W.3d at 278. "A reviewing court should not evaluate drug-use evidence in isolation; rather, it should consider additional evidence that a factfinder could reasonably credit that demonstrates that illegal drug use presents a risk to the parent's 'ability to parent.'" *Id.* (quoting *J.O.A.*, 283 S.W.3d at 345). Thus, under certain circumstances, such as the ones that are present in this case, "any

11

drug activity may render the parent incapable of parenting." *J.S.*, 687 S.W.3d at 554 (citing *R.R.A.*, 687 S.W.3d at 278).

According to Appellant, the Department intervened with A.H.2 "[b]ecause [she] cut his hair," and with A.H. "[b]ecause they thought [she] wasn't mentally stable to take care of her." She contends on appeal that "[A.H.] was never in any danger" because her conduct, including assaulting her mother, occurred after A.H.'s removal. However, Appellant ignores the well-established law that courts may "consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after the child was removed from a parent's care." *A.L.S.*, 660 S.W.3d at 264; *see also In re N.J.H.*, 575 S.W.3d 822, 831–32 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("[D]rug activity can constitute endangerment even if it transpires outside the child's presence."). Additionally, "[a] court need not require physical injury . . . to materialize to find" endangerment. *R.R.A.*, 687 S.W.3d at 279.

Appellant understates the substantial risks that her behavior and home environment posed to her children prior to each of their removals. The Department's involvement began after Appellant publicized her suicidal ideations on Facebook and vocalized frequent homicidal ideations that were targeted at A.H.2. While A.H.2 was in the Department's care after A.H. was born, Appellant broadcasted the father's ongoing aggression and violence on social media, rather than attempting to protect A.H. from it. *See N.J.H.*, 575 S.W.3d at 831–32 ("A child is endangered if his [or her] environment creates a potential for danger that the parent disregards.").

Appellant admitted to "physically fighting" with the father, and the father testified that at least one of their arguments involved "pushing" and "shoving." The father's aggression extended to A.H. at least once when he held a blanket over her. At the final hearing, the father ultimately denounced his actions as "really stupid," whereas Appellant was devoid of any commensurate remorse for taking to social

media and "announcing" the father's conduct, rather than removing the blanket. *See In re E.P.C.*, 381 S.W.3d 670, 683–84 (Tex. App.—Fort Worth 2012, no pet.) (The parent's failure to provide proper nutrition, leaving the child alone, and his lack of remorse for doing so was evidence of endangerment.). Therefore, the trial court could have rationally determined, and formed a strong conviction or belief, that Appellant's and the father's abusive relationship and Appellant's failures to act created "conditions or surroundings which endangered [A.H.]'s physical or emotional well-being." FAM. § 161.001(b)(1)(D); *see In re O.E.R.*, 573 S.W.3d 896, 905 (Tex. App.—El Paso 2019, no pet.) ("Physical violence in the home leads to an unstable and unpredictable environment for children.").

We further observe that, although Appellant was a victim of the father's abuse, her conscious disregard of a substantial risk to A.H. that flows from such conduct does not convert Appellant's "*status* as an abuse victim into a de facto basis for termination" under these circumstances. *See In re A.P.*, 672 S.W.3d 132, 137 (Tex. 2023) (Young, J., concurring). In this regard, Appellant exhibited a continuing pattern of abusive and unstable behavior outside of her relationship with the father— she assaulted her mother, was convicted and confined in jail, missed several drug test appointments, and tested positive for illegal substances. *See N.J.H.*, 575 S.W.3d at 832 ("[A]busive and violent criminal conduct by a parent can also produce an environment that endangers a child's well-being, and evidence that a person has engaged in such conduct in the past permits an inference that the person will continue [to engage in] violent behavior in the future."); *see also In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Domestic violence, want of self control, and propensity for violence may be considered as evidence of endangerment.").

Appellant contends that she "was acting out due to postpartum depression." "While mental incompetence or mental illness alone are not grounds for termination

13

of the parent-child relationship, '[w]hen a parent's mental state allows the parent to engage in conduct that endangers the physical or emotional well-being of the child, that conduct has bearing'" on the trial court's decision to terminate a person's parental rights. *In re E.G.*, 643 S.W.3d 236, 253 (Tex. App.—Amarillo 2022, no pet.) (quoting *In re P.W.*, 579 S.W.3d 713, 727 (Tex. App.—Houston [14th Dist.] 2019, no pet.)). The trial court was thus permitted to consider Appellant's alarming behavior surrounding A.H.2's removal, and that she was not taking her prescribed medication for depression, although required, while caring for A.H. *See id.*; *see also In re M.S.*, 662 S.W.3d 620, 630 (Tex. App.—Beaumont 2023, pet. denied) (mother's "unstable behavior and . . . untreated mental health issues" are evidence of endangerment).

Furthermore, Appellant tested positive for marihuana in November 2021 and March 2022 after A.H.2's removal, and again in August 2022 and September 2023 while A.H. was in the Department's care. She also refused to submit to drug testing in July, August, October, and December 2023. The Texas Supreme Court has consistently recognized that "miss[ing] multiple drug tests after the [child]'s removal" and "test[ing] positive for marijuana shortly before the final hearing commence[s]" permits a reasonable factfinder to find endangerment by clear and convincing evidence. *R.R.A.*, 687 S.W.3d at 277–78 (quoting *J.O.A.*, 283 S.W.3d at 346).

Appellant's voluntary, deliberate, and conscious acts constitute more than a single instance of conduct. Her past behavior, minimization of her conduct, drug use, failure to submit to required drug screens, and failure to properly address and treat her mental health issues, permit the rational conclusion that relinquishing A.H. to her care would pose a substantial risk of harm to the child. *See In re Z.G.*, No. 02-23-00038-CV, 2023 WL 3521848, *5 (Tex. App.—Fort Worth May 18, 2023, pet. denied) (mem. op.) (the parent's denials and refusal to acknowledge the pervasive

"drug use of the family unit" weighed in favor of terminating his parental rights); *In re A.J.W.*, No. 04-19-00346-CV, 2019 WL 6333468, at *6 (Tex. App.—San Antonio Nov. 27, 2019, no pet.) (mem. op.) ("The [trial] court could have rationally concluded that [mother] is unable to protect her children or to provide them a safe and stable environment because she minimizes her drug problem."); *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *7 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.) (the mother's "choice to minimize her past drug use" was a factor of "particular significance" in the best-interest analysis).

On this record, we conclude that there is legally and factually sufficient evidence to support the trial court's finding that Appellant engaged in a continuing course of conduct that endangered the physical or emotional well-being of A.H. *See* FAM. § 161.001(b)(1)(E). We likewise conclude that the evidence is legally and factually sufficient to establish that Appellant was aware of A.H.'s endangering environment prior to removal and consciously disregarded it. *See id.* § 161.001(b)(1)(D).

Accordingly, we overrule Appellant's third issue.

C. *The Best Interest of the Child Determination*

In Appellant's second issue, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of A.H.

First, we reiterate that evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). Put differently, the absence of evidence on some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas

15

2015, no pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.)). Indeed, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.). "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72.).

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving due deference to the trial court, as we must, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of A.H. *See Holley*, 544 S.W.2d at 371–72.

As we have said, in its best interest determination, a trial court, as the factfinder, may infer that a parent's past endangering conduct may recur if the child is returned to the parent. *See In re L.N.C.*, 573 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *J.D.*, 436 S.W.3d at 118; *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("The factfinder may consider prior CPS history of neglect, drug abuse, or lack of care for the children."). Evidence that is relevant to Section 161.001(b)(1) termination grounds may also be relevant to the determination of the child's best interest. *In re C.V.L.*, 591 S.W.3d 734, 753 (Tex. App.—Dallas 2019, pet. denied). And evidence that supports termination under the grounds listed in Section 161.001(b)(1) can be considered by the trial court in its best-interest

16

analysis. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266. Therefore, the trial court could properly consider Appellant's endangering conduct in determining whether the termination of her parental rights was in A.H.'s best interest. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The record shows that Appellant and the father exposed A.H. to domestic violence and marihuana use for the first several months of her life. Appellant's older child—A.H.2—had already been removed because of Appellant's threats to harm him and herself, her marihuana use, and the ongoing domestic violence in the home. *See C.H.*, 89 S.W.3d at 27–28 (past performance as a parent "could certainly have a bearing on [a parent's] fitness to provide for" her child). After A.H.'s removal, Appellant tested positive for illegal substances twice, missed at least four drug test appointments, was convicted of and confined for assault, and lived in several impermanent locations. Such conduct undoubtedly "exposes the child[] to the possibility that [Appellant] may be impaired or imprisoned," which weighs in favor of finding that termination of Appellant's parental rights was in A.H.'s best interest. *See J.S.*, 687 S.W.3d at 551; *In re Z.J.B.*, No. 14-18-00759-CV, 2019 WL 347474, at *5, *7 (Tex. App.—Houston [14th Dist.] Jan. 29, 2019, pet. denied) (mem. op.) (a parent's single positive drug screen and his failure to submit to three additional drug screenings suggested continued illegal drug use by him and weighed in favor of the trial court's best-interest finding).

Despite Appellant's denial of drug use, the trial court, as the factfinder, was permitted to disbelieve Appellant's testimony and conclude that she continued using marihuana during the pendency of this case. *See In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). In any event, Appellant refused to dispense with her drug-related conduct by continuing to surround herself with others who used drugs. *See, e.g., In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.). Even with her periods of compliance, Appellant's pattern of conduct could lead to "a life of

17

uncertainty and instability" for A.H. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). And the trial court was not required to conclude that Appellant had adequately addressed her drug issues in light of her refusal to appear for scheduled drug tests and her positive tests in the months leading up to the final hearing. *See J.O.A.*, 283 S.W.3d at 346 ("[E]vidence of improved conduct, especially of short-duration, does not conclusively negate . . . a long history of drug use and irresponsible choices.").

Additionally, A.H.'s foster mother testified that A.H. is "doing great" in her current placement. A.H. has bonded with her foster parents and their four sons, and the foster parents hope to adopt her. *See Holley*, 544 S.W.2d at 371–72. Appellant, by contrast, did not demonstrate the ability to maintain stable housing, control her aggression, or abstain from marihuana use. Instead, Appellant minimized her conduct and imputed blame to everyone except herself. *See A.J.W.*, 2019 WL 6333468, at *6; *A.E.*, 2015 WL 1184179, at *7. For example, Appellant justified assaulting her mother because her mother got "all in her face" and made her upset. She also testified that she was not receiving any counseling or other treatment at the time of trial because she was not "dealing with the same level of depression." The trial court was entitled to find that these factors weighed in favor of terminating Appellant's parental rights to A.H.

Appellant's other excuses for her behavior included her age, lack of education, inability to afford housing, postpartum depression, the delayed return of A.H.2, and her caseworker "ghost[ing]" her. Although we are sympathetic to the struggles of young parents, which can be compounded by mental health issues, we are bound to protect, as the trial court did, the best interest of the child. *See* FAM. § 153.002 (West 2014) ("The best interest of the child shall always be the primary consideration of the court."); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003); *see also In re R.M.C.*, No. 04-18-00706-CV, 2019 WL 1370367, at *3 (Tex. App.—San Antonio Mar. 27,

18

2019, pet. denied) (mem. op.) ("Although we are sympathetic to the parents' efforts to regain custody, . . . termination of . . . [their] parental rights is in [the child's] best interest."). Consequently, Appellant's criminal behavior, her failure to secure a safe and stable home environment, her failures to submit to scheduled drug testing, and her positive drug tests support the trial court's best-interest finding. *See E.C.R.*, 638 S.W.3d at 769 ("A trial court is permitted to consider a parent's . . . failure to comply with a family plan of service in its best interest determination."); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with [her] family service plan support a finding that termination is in the best interest of the child.").

Upon considering the record as it relates to Appellant's actions and inactions, the emotional and physical danger to A.H. now and in the future, Appellant's parental abilities, and Appellant's history with the Department, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of A.H. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule Appellant's second issue.

IV. *This Court's Ruling*

We affirm the order of the trial court.


W. STACY TROTTER
JUSTICE


August 21, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.